IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

NICHOLAS M.,

Plaintiff,

v.

Civil Action No.
3:19-CV-0276 (DEP)

ANDREW M. SAUL, Commissioner of Social Security,[1]

Defendant.

---

APPEARANCES: | OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW OFFICE
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

PETER A. GORTON, ESQ.

FOR DEFENDANT

HON. GRANT C. JAQUITH
United States Attorney for the
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

RONALD MAKAWA, ESQ.
Special Assistant U.S. Attorney

---

1 Plaintiff's complaint named Nancy A. Berryhill, in her capacity as the Acting Commissioner of Social Security, as the defendant. On June 4, 2019, Andrew Saul took office as Social Security Commissioner. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[2] Oral argument was conducted in connection with those motions on April 15, 2020, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

---

[2] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

ORDERED, as follows:

1) Plaintiff's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3) The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4) The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated: April 21, 2020
Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------------------------x

Nicholas M.,

Plaintiff,

vs. 3:19-CV-276

ANDREW M. SAUL, Commissioner of Social Security,

Defendant.

---------------------------------------------------x

*DECISION* - April 15, 2020

James Hanley Federal Building, Syracuse, New York

HONORABLE DAVID E. PEEBLES

United States Magistrate Judge, Presiding

APPEARANCES (by telephone)

For Plaintiff: LACHMAN, GORTON LAW FIRM
Attorneys at Law
1500 East Main Street
Endicott, NY 13761
BY: PETER A. GORTON, ESQ.

For Defendant: SOCIAL SECURITY ADMINISTRATION
J.F.K. Federal Building
15 New Sudbury Street
Boston, MA 02203
BY: RONALD W. MAKAWA, ESQ.

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

THE COURT: I have before me a matter that was commenced by the plaintiff pursuant to 42, United States Code, Sections 405(g) and 1383(c)(3) challenging a determination by the Commissioner of Social Security that plaintiff was not disabled at the relevant times and, therefore, ineligible for the Title XVI benefits that he sought. The background is as follows.

Plaintiff was born in March of 1990. He is currently 30 years old. He was 25 years of age at the time of the alleged onset of his disability in February of 2015. He was approaching age 25, I should say.

Plaintiff lives in a house with his parents in Johnson City. He is not married. He stands 5-foot-11 in height and weighs between 288 and 312 pounds, depending on where you look in the record, at Administrative Transcript 59, 192 and 350.

Plaintiff has a college degree in geography with a focus on Environmental and Research Management. He attended regular classes throughout his schooling. Plaintiff has a driver's license and does drive. He is right-hand dominant.

Plaintiff's last work was in February of 2015 in a position that he left due to his obsessive-compulsive disorder, or OCD. He held part-time jobs and summer jobs while in college, including as a laborer doing dormitory painting and other similar projects. He was also a store

stocker in 2013, and from 2014 to 2015 a customer service representative at a call center for a utility. Plaintiff claims that he cannot work because of his OCD and the amount of time he spends in a bathroom cleaning himself. That's at page 67.

Physically plaintiff suffers from asthma, which has been a problem for him since childhood; Hashimoto's disease, which is an autoimmune deficiency; hypothyroidism; obesity; hypertension; and back pain.

Mentally plaintiff suffers from OCD, anxiety, and a germophobia that he developed in or around 2014. Some of the symptoms include sweating, cleaning himself with vinegar, taking long showers and long time in the bathroom after going to the bathroom to clean himself.

His mental condition has resulted in periods of hospitalization. He was taken with the help of police to the emergency room on March 29, 2015 to March 30, 2015, and he was hospitalized for psychiatric reasons from April 1 to April 17, 2015. His GAF score was 20 on admission and 60 upon discharge. He was also hospitalized July and early August of 2015 for two weeks, again for psychiatric reasons, with a GAF score of between 20 and 30. Several other CPEP visits as well after that and before that including December 2014.

Treating sources include a general practitioner,

Dr. Rai, who he has treated with between 2014 and 2017; Dr. Marisa DeSimone, who is an endocrinologist, who sees the plaintiff every six months and treated plaintiff from 2015 to 2017; and Dr. Surya Toraty, who sees plaintiff every approximately four weeks from 2016 to 2018. Plaintiff also sees a counselor who may work with Dr. Toraty.

In terms of medications, plaintiff has been prescribed Anafranil, Geodon, Armour thyroid, Klonopin, Celexa, Clonazepam, Ziprasidone, Clomipramine, and Invega.

In terms of activities of daily living, plaintiff does some cooking, can wash dishes, shop, watch television, work on the computer. He does mall walking and walks in nature. He reads, dresses, bathes, can take care of his personal hygiene, spends time with friends, enjoys video games and listens to music.

Plaintiff apparently, according to his parents, in 2016 was a daily smoker of marijuana, at page 609. He denied, however, smoking at the hearing in this matter at page 71. In the past it appears he may have abused marijuana, that's at page 376, 300 and 314, that may go back to 2007.

Procedurally, plaintiff applied for Title XVI Supplemental Security Income Benefits on September 22, 2015, alleging an onset date of February 12, 2015. He claimed disability based upon Hashimoto's disease, anxiety, fatigue,

OCD and hypothyroidism. A hearing was conducted on February 22, 2018 before Administrative Law Judge Mark Clayton to address plaintiff's claim for benefits. ALJ Clayton issued a decision on May 15, 2018, finding that plaintiff was not disabled at the relevant times and, therefore, ineligible for the benefits sought. The Social Security Administration Appeals Council denied plaintiff's request for review of that decision on January 20, 2019, making it a final determination of the Agency. This action was commenced on February 28, 2019. In his decision ALJ Clayton applied the familiar five-step test for determining the issue of disability.

At step one he determined that plaintiff had not engaged in substantial gainful activity since September 22, 2015, the date of plaintiff's application for SSI benefits.

At step two he concluded that plaintiff suffers from severe impairments that impose more than minimal limitations on the ability to perform basic work activity, including asthma, Hashimoto's disease, hypothyroidism, obesity, anxiety, and obsessive-compulsive disorder, and that he rejected the suggestion that plaintiff should be also found to have a severe impairment in the nature of schizophrenia or psychotic disorder.

At step three he concluded that plaintiff's conditions did not meet or medically equal any of the listed

presumptively disabling conditions, specifically considering listings 3.03 dealing with asthma; 9.00 dealing with endocrine disorders. He considered the claimant's obesity pursuant to Social Security Ruling 02-1p, and he considered his mental condition under listing 12.06.

The Administrative Law Judge then determined that plaintiff retains the Residual Functional Capacity, or RFC, to perform light work with limitations that are spelled out in pages 17 and 18 of the Administrative Transcript.

Applying that RFC at step four, the Administrative Law Judge concluded plaintiff is unable to perform his past relevant work which was characterized as a work order service clerk and a construction worker II.

At step five Administrative Law Judge Clayton first noted that if plaintiff was capable of performing a full range of light work, the Medical/Vocational Guidelines, and specifically Grid Rule 202.21, would direct a finding of no disability. On the ability to perform light work, he determined based upon the testimony of the vocational expert that plaintiff nonetheless is capable of performing work as a swatch clerk, a packing header, and a blade balancer, and therefore concluded that plaintiff was not disabled at the relevant times.

As you know, my task is limited to determining whether correct legal principles were applied and the

resulting determination is supported by substantial evidence. As the Second Circuit Court of Appeals has noted in *Brault versus Social Security Administration*, 683 F.3d 443, this is an extremely rigid standard, it is a higher standard than clearly erroneous. Substantial evidence, of course, is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Again, this is an extremely deferential standard.

In support of his challenge to the Commissioner's determination, plaintiff contends first that the Commissioner erred in failing to determine at step two that plaintiff's psychosis was a severe impairment. The next contention is that the Residual Functional Capacity does not adequately address plaintiff's limitations in the areas of work pace and attendance and resulted from the improper weighing of medical opinions.

The plaintiff urges the Court to find that a closed period of disability should have been determined if it was in fact true as the Administrative Law Judge suggested that there was improvement after 2015 of plaintiff's condition, and the final argument of course is that the Commissioner did not carry his burden at step five based on the effect of the RFC error.

First with regard to the step two argument, the governing regulations provide that an impairment or

combination of impairments is not severe if it does not significantly limit a claimant's physical and mental ability to do basic work activities, 20 CFR Section 404.1521. The section goes on to define basic work activities to include the abilities and aptitudes necessary to do most jobs.

Step two analysis. Of course, step two is de minimis. It's intended only to screen out the truly weakest of cases. *Dixon versus Shalala*, 54 F.3d 1019, from the Second Circuit 1995. It is true, however, that the mere presence of a disease or impairment or even establishing that a person has been diagnosed or treated for a disease is not, by itself, sufficient to establish a condition as severe.

It's certainly clear that there is some support for the argument that plaintiff suffers from a psychotic mental disability. The Administrative Law Judge rejected that at page 15 of the Administrative Transcript. The burden of plaintiff is to establish even at step two severity of a condition and the inability or the interference of the ability to perform basic work functions.

On May 12, 2016, plaintiff's treating psychiatrist, Dr. Toraty, diagnosed plaintiff with schizophrenic spectrum and other psychotic disorders, general. It's at page 544 of the Administrative Transcript. He was also admitted to the hospital with a psychosis diagnosis. That's at page 376. Although it was noted that it could be a side effect of

Celexa or due to not taking Invega. That's at 299.

So there is some support for the diagnosis of symptoms of OCD that are psychotic in nature. It was noted, however, and I agree, that an error at step two is potentially harmless because the Judge did proceed to step three of the sequential analysis and does appear to have considered plaintiff's mental health symptoms in the ensuing.

The next issue concerns the weighing of medical opinions and the specific issue of work pace and attendance. There are many opinions that speak to that in the record. Non-examining consultant Dr. D. Brown noted on December 30, 2015 at pages 109 to 110 the claimant appeared to retain sufficient ability to meet the basic demands of simple work with low social contact. In section I of the mental Residual Functional Capacity assessment, at page 108, Dr. Brown notes that plaintiff is moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and also moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. And then for an explanation it says, "see below."

Consultative examiner Dr. Amanda Slowik examined the plaintiff and issued a report on November 12, 2015. In

it she opined that the claimant's ability to maintain a regular schedule and appropriately deal with stress is moderately to markedly limited. Page 342 of the Administrative Transcript.

Dr. Jagraj Rai, plaintiff's treating physician, issued an opinion on December 21, 2017, opining that plaintiff would be off task more than 15 but less than 20 percent of the day, that's at page 408, and absent more than four times per month, that's at page 409 of the Administrative Transcript.

Dr. Marisa DeSimone, plaintiff's treating endocrinologist, opined on December 20, 2017 that plaintiff would be off task more than 33 percent of the time and absent more than four times per month. That's at page 358 and 359 of the Administrative Transcript.

Dr. Surya Toraty, plaintiff's treating psychiatrist, gave an opinion on January 4, 2018 that the plaintiff would be off task 16 to 20 percent of the time and absent three times or more per month. That's at 534 and 535 of the Administrative Transcript.

A therapist that plaintiff sees, a marriage and family therapist, issued an opinion on January 10, 2018 that it is probable that mental issues will create a significant challenge to plaintiff's ability to obtain or maintain consistent employment. That's page 537 of the Administrative

Transcript.

These opinions are largely uncontradicted. I don't find necessarily that Dr. Brown's statements concerning moderate limitation are directly contrary to the unanimous opinions of three treating sources. The record lends support to the determinations. The opinions of those three treating sources were rejected by the Administrative Law Judge. Those are opinions that at least under the regulations that were in place at the time of the Administrative Law Judge's decision were entitled to controlling weight unless they are contrary to other substantial evidence in the record, including the opinions of other medical experts.

I agree that if there are contrary opinions, under *Veino against Barnhart* the Commissioner is entitled to weigh those as he sees fit, provided that substantial evidence supports the resulting determination. If controlling weight is not given, there are several factors specified in 20 CFR Section 416.927 that must be considered, the so-called *Burgess* factors; the length of the treatment relationship and the frequency of examination, nature and extent of the treatment relationship, evidence supporting the treating provider's opinion, the degree of consistency between the opinion and the record as a whole, whether the opinion is given by a specialist, and other evidence that had not been brought to the attention of the Administrative Law Judge.

In this case I find that the Administrative Law Judge's decision is woefully inadequate in discussing the *Burgess* factors. There are three treating sources that have longitudinal history with the plaintiff. One is a psychiatric expert, Dr. Toraty. They are unanimous in opining plaintiff is unable to maintain a regular schedule and keep work pace as expected by an employer. The vocational expert at 95 to 97 testified that if the plaintiff was off task 15 to 20 percent of the time, he could not sustain full-time employment, and if he was absent four times per month, similarly. The limits were testified to as 10 to 15 percent off task and eight absences a year and one during a probationary period, according to the vocational expert.

In this case the evidence is overwhelming, in my view, and only mildly perhaps contradicted by Dr. Brown, that plaintiff could not meet those requirements. I note that one of the things that wasn't taken into account is the cyclical nature of plaintiff's psychotic and OCD condition. And, yes, there are good days, but there are also bad days, and that makes it difficult to say that treatment notes do not support the treating source's opinions because there are positives and also negatives. I've been through the record very carefully.

The step five determination as reflected in the Residual Functional Capacity does not accurately reflect

plaintiff's ability to maintain a regular schedule and maintain work pace. I'm tempted to take Mr. Gorton up on his statement with the directed finding of disability as the plaintiff has requested, but I think this is a situation where it requires a more thorough analysis of the opinions of the treating sources and why their opinions were not controlling and a determination of what if any weight they should be given, particularly since the opinion of Dr. Brown at best is lukewarm and doesn't flatly contradict. I understand the Commissioner's argument that implicit in Dr. Brown's conclusion is a finding that plaintiff can maintain pace and attendance, but there is enough very compelling evidence to the contrary that I think this needs a fresh look.

So I'm going to grant judgment on the pleadings to the plaintiff but without a directed finding of disability. I'm, therefore, granting judgment on the pleadings to the plaintiff without a directed finding of disability and for further consideration of the Commissioner's determination and remanding the matter without a directed finding of disability for further proceedings consistent with this opinion.

*   *   *

C E R T I F I C A T I O N

I, EILEEN MCDONOUGH, RPR, CRR, Official Court Reporter in and for the United States District Court, Northern District of New York, DO HEREBY CERTIFY that the foregoing is a true and correct transcript produced from a digital recording.

EILEEN MCDONOUGH, RPR, CRR
Official U.S. Court Reporter